UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROSE ROBERTSON, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:17-CV-02668-CAP |
| RIVERSTONE COMMUNITIES, LLC, | |
| Defendant. | |

# **O R D E R**

This action is before the court on the Report and Recommendation ("R&R") of the magistrate judge [Doc. No. 61], which recommends granting the defendant's motion for summary judgment. The plaintiff brings claims for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, alleging that she was terminated due to her race and subjected to a hostile work environment. She also brings claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, alleging that the defendant interfered with her rights under the FMLA and retaliated against her for exercising them.

Generally, the plaintiff's race discrimination allegations are based on racist comments allegedly made no later than March 2014 by an employee who would later become the plaintiff's supervisor in May 2015—nearly three months before her termination in late July 2015. Her FMLA claims are based on the 10-day leave she took and returned from three days before her termination. The R&R recommends granting the defendant's motion for summary judgment as to all claims. The plaintiff has filed objections to the R&R [Doc. No. 63], to which the defendant has responded [Doc. No. 64], and the plaintiff has further replied [Doc. No. 65]. The court must now determine whether to accept, reject, or modify the R&R. Having reviewed the record and the parties' submissions, the court enters the following order.

## I. Background

The defendant is a mobile home property firm. In October 2012, the plaintiff was hired as the property manager for one of the defendant's properties at Deer Creek. In January 2014, the plaintiff received the Property Manager of the Year Award for 2013. At the ceremony, another property manager, René Scott, told the plaintiff that she won the award because she is black.[1] As noted further below, Scott allegedly made

---

[1] Another property manager, "Nicole," made the same comment to the plaintiff at the ceremony as well.

numerous other racist remarks, each of them occurring no later than March 2014.

In March 2014, the plaintiff became the property manager for the Clayton Village property (in addition to Deer Creek), and in April 2014, she was promoted to area manager for five additional properties in Georgia. The plaintiff reported to senior regional manager Melissa Loeffelbein throughout this time period.

On May 4, 2015, the plaintiff was demoted to property manager, meaning she lost her area manager role but continued to manage the Clayton Village and Deer Creek properties. Within a week, she began reporting to Scott as her new supervisor. On May 10, 2015, the plaintiff received an email from Scott explaining that the Deer Creek property's occupancy levels and accounts receivables ("AR") needed to be improved in the next three months or disciplinary action could occur. One month later, the occupancy and AR numbers at Deer Creek failed to improve, and the plaintiff failed to open two of the property's pools by Memorial Day.

On June 3, 2015, the plaintiff was reprimanded for these failures. The plaintiff received a summary of her performance deficiencies which she reviewed in a meeting with Scott and Loeffelbein. The written warning summary noted decreasing occupancy at the Deer Creek and Clayton Village

properties, increasing AR numbers at Clayton Village, and her failure to open two of the pools as of June 3, 2015. The warning also noted that the plaintiff failed to properly connect housing units at Clayton Village to sewer, electrical, and water connections. And, despite prior requests to do so, she also failed to fix certain signage at that property and to address items identified at a fire inspection. The plaintiff was advised that (1) the pools were to be opened immediately and remain open; (2) the AR needed to be lowered to under 3% by July 31, 2015, with improvement in June; (3) occupancy needed to grow immediately; (4) three units needed to be ready for lease by June 12, 2015; (5) the signage and fire inspection items needed to be fixed by June 12, 2015; and (6) the units lacking utilities connections needed to be readied immediately. The next day, June 4, 2015, the plaintiff sent an email to Scott, Loeffelbein, and human resources director Hilary Snyder explaining that she disagreed with the concerns in the warning but would work to fix the issues immediately.

On June 29, 2015, the plaintiff received a performance evaluation for the first half of 2015. The evaluation was completed by Loeffelbein, who indicated that occupancy levels declined at Deer Creek from February to March 2015, and also fell from January to May 2015 at Clayton Village, where occupancy was below the budgeted level from February to May 2015.

She also noted that the AR numbers for those properties needed to be decreased immediately.

On July 14, 2015, Scott issued the plaintiff a second written warning for poor performance. The warning was approved by Loeffelbein before it was sent by Scott. The warning stated that one of the Deer Creek pools remained closed and failed a July 1, 2015 inspection due to issues that could have been avoided by the plaintiff.

On July 16, 2015, the plaintiff left work due to a migraine and did not return to work until July 27, 2015, as recommended by her doctor. The plaintiff was told to fill out a request-for-leave form and to submit a certification form completed by her doctor by July 31, 2015. On July 27, 2015, the plaintiff returned to work.

On July 28, 2015, Scott, Snyder, and Loeffelbein conducted a site visit at Deer Creek. The next day, they met together with the director of property management Sarah Ruitta—who had hired the plaintiff—to discuss the plaintiff's performance. That night, Snyder circulated a draft termination form to Scott, Ruitta, and Loeffelbein. The draft form contained some blanks for additional details, such as occupancy numbers for the properties, which Scott took part in completing.

On July 30, 2015, the plaintiff met with Scott, Snyder, and Loeffelbein. Scott attended in-person while the Snyder and Loeffelbein attended via video conference. Loeffelbein told the plaintiff that she was being terminated for performance reasons, and the plaintiff was given a written termination notice. The plaintiff's position was immediately filled by her assistant manager, Keisha Smith, and on August 3, 2015, Kenya Smoot was hired to replace the plaintiff. Both Smith and Smoot are black.

After being terminated, the plaintiff was told by her former supervisor, Shannon Smith—who left the company in March 2014—that she had previously heard Scott say racist comments, including, "There's too many f****ing n*****s in Atlanta, I'm not going there." Shannon Smith Dep. at 20 [Doc. No. 60].[2] Smith had also heard Scott say that she "hated n*****s" on multiple occasions, and otherwise used the word "n*****s" at least twenty times. *Id.* at 20–21, 47. Each of the racist comments Smith allegedly heard Scott say occurred no later than March 2014.

The plaintiff later filed this action, alleging that the defendant violated Title VII and Section 1981 by reprimanding and terminating her based on her race and subjecting her to a hostile work environment. She also alleges

---

[2] Like the R&R, the court uses "f***ing," and "n*****s," as less offensive shorthand for the terms actually used, and assumes the reader is familiar with the meaning of these abbreviations. *See* R&R at 18 n.12 [Doc. No. 61].

that the defendant unlawfully interfered with her rights under the FMLA and unlawfully retaliated against the plaintiff's exercise of her FMLA rights by taking leave due to migraines. The defendant has moved for summary judgment [Doc. No. 42], which the magistrate judge recommends be granted [Doc. No. 61]. The plaintiff has filed objections [Doc. No. 63], to which the defendant has responded [Doc. No. 64] and the plaintiff has further replied [Doc. No. 65]. The court now determines whether to accept, reject, or modify the R&R.

## II. Legal Standard

To challenge the findings and recommendations of the magistrate judge, a party must file with the clerk of court written objections which "shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis of the objection." *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989). If timely and proper objections are filed, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

The court, therefore, will review de novo those findings and recommendations of the R&R to which objection has been made. *See Heath,* 863 F.2d at 822; *see also Canty v. Fry's Elecs., Inc.*, 736 F. Supp. 2d 1352,

1381 n.2 (N.D. Ga. 2010). The court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Since the underlying motion in this case is a motion for summary judgment, the court will also set forth the applicable legal analysis for resolving that motion. Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by

coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that are disputed in good faith but are not material to the case will not preclude summary judgment, *id.*, and "genuine" issues of material fact must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted). Conversely, when the evidence could reasonably result in a verdict for the nonmovant, a genuine dispute exists and summary judgment is improper. *Anderson*, 477 U.S. at 247.

## III. Discussion

The plaintiff objects to the R&R on several grounds. First, she argues that the magistrate judge improperly found that she failed to provide direct evidence of her race discrimination/disparate treatment claim brought under Title VII and Section 1981. Second, she argues that the R&R overlooked circumstantial evidence for her disparate treatment claim that supports

denying summary judgment. Third, and on similar bases, the plaintiff objects to the R&R's finding that she has failed to provide sufficient evidence of a hostile work environment. Finally, as to her FMLA claims, the plaintiff objects to the R&R's finding that her FMLA claims must be dismissed because she is not an "eligible employee," as required to assert FMLA rights.

## A. Disparate Treatment under Title VII and Section 1981

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(l). "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). "Both Title VII and [Section] 1981 have the same requirements of proof and present the same analytical framework." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). In addition, the plaintiff alleges a violation of Title VII and Section 1981 together in her disparate treatment/race discrimination claim. *See* Am. Compl. at 8 [Doc. No. 6]. Therefore, like the R&R, the court will address the plaintiff's Title VII and Section 1981 allegations together.

A claim for disparate treatment on the basis of race may be established by direct or circumstantial evidence. The plaintiff objects to the R&R's finding that she is unable to sufficiently produce either form of evidence for her claim.

### 1. Direct Evidence

"An employee who adduces direct evidence of disparate treatment on the basis of race makes out a prima facie case of intentional discrimination." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). The plaintiff argues that Scott's racist statements show direct evidence of intentional discrimination. These statements are the comment that the plaintiff only won the 2013 Property Manager of the Year Award because she is black, and Smith's testimony that she heard Scott make several racist remarks. All of these alleged statements occurred no later than March 2014—over a year before Scott became the plaintiff's supervisor, and about sixteen months before the plaintiff's termination. The R&R found that, "as invidious as they are, those statements do not constitute direct evidence of discrimination in this case because they are remote in time from and not directed at the employment decisions that [the plaintiff] challenges." R&R at 23. The plaintiff objects, arguing that case law says otherwise about what qualifies as

direct evidence for her discrimination claim. Her objection is due to be overruled.

Generally, the conclusion in the R&R was based on the commonly applied standard that "direct evidence" means "evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard*, 161 F.3d at 1330. The plaintiff does not argue that she meets this standard for direct evidence. Instead, she argues that another, broader standard applies that allows her claim to continue. The plaintiff chiefly cites to a standard set forth in *Wright v. Southland Corporation*, 187 F.3d 1287 (11th Cir. 1999), which says that "direct evidence" means "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic." Setting aside whether the *Wright* standard is appropriate here, the plaintiff still fails because she does not present any evidence of a "causal link" between Scott's statements and her termination. None of the alleged statements occurred even within a year of the plaintiff's termination, and the plaintiff does not otherwise show a causal link with the termination decision that would put the statements in the "direct evidence" category.

As noted in the R&R, trying to connect the statements with her termination requires additional links in the chain that are not there. *See* R&R at 24 (finding that "one must make inferential leaps" to connect Scott's attitude with the decisions to reprimand and terminate the plaintiff). Although the plaintiff cites *Buckley v. Hospital Corporation of America*, 758 F.2d 1525 (11th Cir. 1985) to argue that remote-in-time comments can still qualify, the plaintiff in that case was also able to show discriminatory statements made within a week of the adverse employment action. That is not the case here. Therefore, the court agrees with the R&R that Scott's statements do not constitute direct evidence, nor does any other evidence the plaintiff provides.

### 2. Circumstantial Evidence

When a party relies on circumstantial evidence to prove her case of discrimination, as the plaintiff does here, courts employ the familiar burden-shifting framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case, she has created an inference of discrimination, and the defendant has the burden of producing a legitimate, non-discriminatory reason for its employment action. *Brooks v. Cty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). If

the defendant meets this light burden, then the inference of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id.*

To establish her prima facie disparate treatment claim, the plaintiff must show "that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). However, a plaintiff may also survive summary judgment by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

The R&R found that the plaintiff failed to provide evidence of a similarly situated employee, and the plaintiff does not appear to object to that finding. However, she does object to the R&R's finding that she failed to present "evidence of a convincing mosaic that [the defendant] discriminated against her on the basis of her race." R&R at 32.

The plaintiff argues that the R&R overlooked or improperly discounted the evidence she offered to establish a convincing mosaic of discrimination.

As addressed below, and for similar reasons as those stated in the R&R, the court finds that the evidence the plaintiff points to is insufficient and her objections are due to be overruled.

The plaintiff argues that Scott's racist comments are themselves enough to establish her prima facie case. But the plaintiff shows no connection between the comments and the employment decision—that is, how Scott's alleged racist attitude influenced the termination decision. It is true that Scott participated in the termination process. Yet there is no evidence that this affected the three other superiors who made the termination decision or that they knew about Scott's alleged racist comments, and the plaintiff makes no allegations of discriminatory intent against those three individuals. The plaintiff also asserts that her alleged poor performance was pretextual. She points to the timing of her reprimand and termination, which occurred soon after Scott became her supervisor in May 2015. But the record shows that her performance began to decline before then. For instance, the occupancy levels at Deer Creek and Clayton Village declined before May 2015, and the plaintiff was demoted from the area manager position before Scott was her supervisor. Overall, the evidence of the plaintiff's poor performance undermines her position that her poor performance was a pretext for her termination.

In addition, the plaintiff contends that her poor performance in early 2015 is misleading because she was also serving as an area manager at that time. But she does not dispute that she failed to meet expectations in the area manager role, and she does not argue that she was somehow entitled to lowered property manager expectations during that time. And though plaintiff points to her better performance in 2013, that does not negate failing expectations in 2015.

The plaintiff also asserts that the defendant ultimately sold the Deer Creek and Clayton Village properties because they were not profitable, yet other employees affiliated with it were not terminated for poor performance. Aside from speculation, the plaintiff fails to show how this demonstrates discriminatory intent. Further, many of the plaintiff's performance issues appear unrelated to the properties' profitability, like her failure to open the pools on time or to coordinate proper utilities connections to the units at the properties she managed.

The plaintiff further argues that at one point she attempted to write-up two different employees—one black (Breckins), the other white (Schaffer)— for failure to timely complete different projects, but that her superiors approved only the write-up for Breckins. However, as with her own termination, the plaintiff fails to show how the employees' race played a part

in those decisions. The record shows that both Scott and Loeffelbein reviewed the plaintiff's request to write-up Schaffer, each with their own comments and revisions. The plaintiff learned from Loeffelbein later that she decided not to approve the write-up. The plaintiff asserts that Scott's involvement shows an underlying discriminatory intent, but she does not evidence how Scott's alleged racist attitude influenced Loeffelbein's decision or otherwise how race was a factor. Rather, the plaintiff has testified that she does not believe Loeffelbein is racist. Pl. Dep. at 110 [Doc. No. 59]. The evidence of discriminatory animus is similarly lacking as to the approved write-up of Breckins.

Finally, the plaintiff argues that the timing of the final reprimand she received on July 14, 2015—which concerned her failure to open one of the pools at the Deer Creek property—is evidence of discriminatory intent. She asserts that the short time window between this and her termination prevented her from taking action, which she says could show discriminatory intent. The court disagrees. The subject of the July 14 reprimand was not a new one. The June 3, 2015 reprimand warned her that she was already late in opening the Deer Creek pools, and she responded to the warning by promising to address the issues immediately.

The Eleventh Circuit has recognized at least three categories of circumstantial evidence for establishing a convincing mosaic of discriminatory intent: "(1) suspicious timing, ambiguous statements, similar behavior directed at other members of the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of those outside the protected class; and (3) pretext in the employer's justification." *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 976 (11th Cir. 2014) (internal citations and quotations omitted).[3] Overall, the plaintiff fails to make such a showing, or to otherwise connect a discriminatory intent with her termination. At most, she offers the statements of Scott made over a year before her reprimands and termination. But she fails to put forth evidence connecting Scott's alleged statements and/or racist attitude with the decision to terminate her employment. As addressed above, her remaining attempts to show circumstantial evidence are also lacking. Therefore, upon de novo review, the court agrees with the conclusion in the R&R that the plaintiff has failed to establish her prima facie case via circumstantial evidence.

---

[3] The plaintiff appears to object to the R&R's citation to this authority, arguing that more than these three categories of circumstantial evidence may be available. Pl.'s Objections at 22. Even if that were the case, she fails to put forth another form of circumstantial evidence that would suffice.

**B. Hostile Work Environment**

The plaintiff also asserts a brief objection to the R&R's findings as to her hostile work environment claim. She asserts that the R&R incorrectly found that the plaintiff "has failed to present evidence sufficient to show that [the defendant] was motivated by racial animus when she was written up and discharged." Pl.'s Objs. at 23 [Doc. No. 63] (quoting R&R at 45). However, rather than detailing the basis for her objections, she merely references the arguments she made in her opposition to summary judgment and her objections to the R&R's findings on her race discrimination claim. Her reference to her arguments made in opposition to summary judgment is a general objection that lacks the specificity required for de novo review. And as noted above, her objections regarding the race discrimination claim fail. Because the plaintiff fails to specify any further basis for her objection, her objection is due to be overruled.

**C. FMLA Claims**

The plaintiff's FMLA claims require her to establish that she was an "eligible employee" under the FMLA, meaning that she "has been employed at a worksite where there are least fifty or more employees within a seventy-five mile radius [of her worksite]." *Rich v. Delta Air Lines, Inc.*, 921 F. Supp. 767, 772 (N.D. Ga. 1996) (citing 29 U.S.C. § 2611(2)(A); 29 U.S.C.

§ 2611(2)(B)(ii)).  In its answer to the complaint, the defendant admitted that the plaintiff was an eligible employee under the FMLA.  However, the defendant later attempted to retract that admission as a mistake (which was denied), and the only other record evidence indicates that there were fewer than fifty employees within seventy-five miles of the plaintiff's worksite.  Based on the lack of further evidence, and the principle that a plaintiff's FMLA eligibility is a legal conclusion rather than a factual issue, the R&R found that the plaintiff failed to show she was an eligible employee such that her claims for interference and retaliation under the FMLA must be dismissed.

The plaintiff objects, arguing that the defendant's admission that she is an eligible employee is binding, even if made by mistake.  Like the magistrate judge, the court disagrees.  While a party is typically bound to its admissions in the answer, that is not the rule for allegations of legal conclusions.  *Millette v. DEK Techs., Inc.*, No. 08-60639-CV, 2009 WL 10667760, at *2 (S.D. Fla. Oct. 8, 2009) (finding that the defendant was "not bound by an admission or averment of a legal conclusion in her answer" despite the court's denial of the defendant's motion to amend the answer (listing cases)).  Whether the plaintiff qualifies as an eligible employee is a legal conclusion.  *See Armstrong v. Doherty Fla. N. Port, LLC*, No. 8:14-CV-

1270-T-33, 2014 WL 3585713, at *4 (M.D. Fla. July 21, 2014). And as noted in the R&R, the defendant did not admit to an allegation of how many employees worked within seventy-five miles of the worksite, but to the more conclusory allegation that the plaintiff was an eligible employee under the FMLA.

Accordingly, despite the defendant's admission, the court is not precluded from drawing proper conclusions of law based on the factual evidence. Here, the record evidence shows that the plaintiff's worksite had fewer than fifty employees within a seventy-five-mile radius. The plaintiff argues that without the defendant's admission, she would have sought discovery on the issue. But the record demonstrates that she did so via deposition questioning, and she fails to show what further discovery she would have sought. Therefore, the court agrees with the magistrate judge that the plaintiff has failed to show she was an eligible employee under the FMLA. The plaintiff's objection is due to be overruled.

IV.   Conclusion

Therefore, having reviewed the matter de novo, the plaintiff's objections [Doc. No. 63] to the R&R are **OVERRULED**. The court receives the R&R [Doc. No. 61] with approval, and **ADOPTS** it as the opinion of this

court.  Accordingly, the defendant's motion for summary judgment [Doc. No. 42] is **GRANTED**, and this matter is **DISMISSED**.

**SO ORDERED**, this <u>22nd</u> day of July, 2019.

<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL, JR.
United States District Judge